**J. PAUL MOORHEAD, State Bar #240029**
  Email: moorhead@luch.com
**LAQUER, URBAN, CLIFFORD & HODGE LLP**
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882
Facsimile: (626) 449-1958

Counsel for Plaintiffs, Trustees of the
Operating Engineers Pension Trust, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST; TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND; TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST; TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST; ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, and SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>HERMAN WEISSKER, INC., a California corporation,<br><br>Defendant. | Case No.  5:19-cv-188<br><br>**COMPLAINT FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT AND TRUST AGREEMENTS, AND VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT** |

Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, Engineers Contract Compliance Committee Fund, and Southern California Partnership for Jobs Fund, complain and allege as follows:

///

**Jurisdiction and Venue**

1. This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Court jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA") [29 U.S.C. § 185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)] and section 301(a) of the LMRA [29 U.S.C. § 185(a)] in that this is the district in which the plaintiffs' trust funds are administered, in which the relevant acts took place, and in which moneys are due and payable.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

**Parties**

5. Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, and Trustees of the Operating Engineers Training Trust, are the trustees of four express trusts (collectively "Trusts") created pursuant to written declarations of trust ("Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various employer associations in the construction industry in Southern California and Southern Nevada.

1  The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)]. The trustees are "fiduciar[ies]" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)]. Plaintiff Engineers Contract Compliance Committee Fund is established by Local 12 in accordance with section 6(b) of the Labor Management Cooperation Act of 1978 in order to improve job security and organizational effectiveness. Plaintiff Southern California Partnership for Jobs Fund is an industry-wide advancement fund established by Local 12 and employers. Collectively, all plaintiffs are referred to herein as the "Trustees."

6. At all times material herein, Local 12 has been a labor organization representing employees in the building and construction industry in California and Nevada, and a labor organization representing employees in an industry affecting commerce within the meaning of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

7. At all times material herein, defendant Herman Weissker, Inc. ("HWI") has been a corporation organized and existing by virtue of the laws of the State of California, with its principal place of business in Riverside County, California.

8. Plaintiffs are informed and believe, and thereon allege, that at all times material herein HWI has been a subsidiary of Meruelo Enterprises, Inc., a corporation organized and existing by virtue of the laws of the State of California, with its principal place of business in Los Angeles County, California.

9. Plaintiffs are informed and believe, and thereon allege, that HWI is an "employer" engaged in an "industry affecting commerce," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1), 142(3)] and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

10. Plaintiffs are informed and believe, and thereon allege, that HWI is an "employer" as defined in section 3(5) of ERISA [29 U.S.C. § 1002(5)].

///
///

**Collective Bargaining Agreement, Trust Agreements, and Status of Defendant**

11. On April 16, 2002, HWI executed and delivered an agreement to Local 12, whereby HWI: (A) recognized Local 12 as the sole and exclusive bargaining representative of all HWI's employees performing work of the nature included in Local 12's jurisdiction; and (B) agreed to be bound by the terms and conditions of a written collective bargaining agreement known as the Master Agreement.

12. On April 16, 2002, HWI signed written acknowledgments and acceptances of each of the Trust Agreements, and thereby became bound to the terms and conditions of the Trust Agreements.

13. In or around June 2011, Local 12 filed a petition with the National Labor Relations Board (the "NLRB") whereby Local 12 requested that the NLRB conduct an election, pursuant to section 9 of the National Labor Relations Act of 1935, as amended ("NLRA") [29 U.S.C. § 159], to determine whether Local 12 would represent certain employees of HWI. Local 12 and HWI entered into a Stipulated Election Agreement, which was approved by the NLRB on July 7, 2011.

14. On or about August 5, 2011, the NLRB held an election of HWI's employees pursuant to the Stipulated Election Agreement. As a result of this election, the NLRB certified Local 12 as the exclusive representative of all HWI employees performing classifications of work identified and/or covered by the Master Agreement.

15. On January 27, 2017, HWI authorized the Associated General Contractors of California ("AGCC") to represent HWI in matters related to labor negotiations with Local 12. HWI thereby became bound to the terms and conditions of the collective bargaining agreements in effect between Local 12 and the AGCC, including the Master Agreement.

16. HWI is an "employer" and a "contractor" as those terms are understood in the Master Agreement and the Trust Agreements.

///

///

**Obligations Under the Collective Bargaining Agreement, Trust Agreements, and Employee Retirement Income Security Act**

17. By the terms and provisions of the Master Agreement and the Trust Agreements, and at all times material herein, HWI agreed, and was obligated, to the following:

   A. Prepare and submit true, complete and accurate written monthly contribution reports ("Reports") to the Trusts on a timely basis showing the identity of its employees performing any work covered by the Master Agreement, the number of all hours worked by or paid to each of these employees, and the proper calculation of the fringe benefit contributions due for such employees. These Reports must be submitted to the Trusts at their administrative offices in Pasadena, California, on or before the 10th day of each successive month; and

   B. Pay to the Trusts fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. These amounts are due and payable to the Trusts at their administrative offices in Pasadena, California, on or before the 10th day of each successive month; and

   C. Permit the Trustees and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid to the Trusts pursuant to the Master Agreement and the Trust Agreements.

18. Section 515 of ERISA [29 U.S.C. § 1145] provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Pursuant to section 515 of ERISA [29 U.S.C. § 1145], HWI was obligated to make contributions to the Trusts.

///

///

19. Section 429 of ERISA [29 U.S.C. § 1059] provides that "[e]very employer shall … maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." Pursuant to section 429 of ERISA [29 U.S.C. § 1059], HWI was obligated to maintain records sufficient to allow the Trusts to determine the contributions owed by HWI, and the benefits due to the employees of HWI.

### The Audit and the Defaulted Settlement Agreement

20. In or around January 2017, the Trustees performed an audit (the "Audit") of HWI's payroll and related records in order to determine if HWI properly reported and paid fringe benefit contributions to the Trusts during the time period from May 1, 2014, through August 31, 2016. Pursuant to the Audit, the Trustees determined that HWI failed to report and pay fringe benefit contributions to the Trusts based on all hours worked by or paid to each employee of HWI who performed work covered by the Master Agreement. Pursuant to the Audit, the Trustees determined that HWI failed to pay the Trusts $1,187,587.90 for fringe benefit contributions. Based on the Audit, the Trustees claimed a right to payment from HWI for these fringe benefit contributions, plus accrued interest and liquidated damages.

21. On August 1, 2017, the Trustees and HWI entered into a Settlement Agreement related to the Audit. Pursuant to the Settlement Agreement, HWI agreed,

> "that during the period from September 1, 2017, through March 31, 2019, all work performed by HWI that is covered by the Master Agreement shall be performed exclusively by members of Local 12 employed by HWI, or by a subcontractor of HWI who is also bound by the Master Agreement, regardless of whether such work is also covered by some other collective bargaining agreement."

HWI also agreed "to pay the Trusts in a timely manner all contributions and other amounts due to the Trusts under the Master Agreement … ."

///

22.   Pursuant to the Settlement Agreement, the Trustees agreed "to cease any efforts to collect amounts owed by HWI pursuant to the Audit," provided HWI complied with the provisions of the Settlement Agreement alleged in paragraph 21 above. The Trustees and HWI agreed that if HWI failed to comply with the provisions of the Settlement Agreement alleged in paragraph 21 above, HWI would be in "Default" of the Settlement Agreement. In case of "Default," the Trustees have the right to resume their collection efforts and to file a lawsuit against HWI to collect all amounts owed based on the Audit. HWI agreed that any statute of limitations period applicable to the Trustees' right to collect amounts owed based on the Audit were tolled during the period from June 7, 2017, through March 31, 2019.

23.   Plaintiffs are informed and believe, and thereon allege, that HWI violated the Settlement Agreement by engaging in the following conduct: (A) causing work covered by the Master Agreement to be performed by employees who were not members of Local 12; (B) retaining subcontractors not bound to the Master Agreement, and having such subcontractors perform work covered by the Master Agreement; and (C) failing to pay the Trusts in a timely manner all contributions and other amounts due to the Trusts under the Master Agreement. Plaintiffs are informed and believe, and thereon allege, that HWI engaged in this conduct during the time period from September 1, 2017, through March 31, 2019. Based on this conduct, HWI is in "Default" under the Settlement Agreement.

**Claim for Relief**

**Breach of Collective Bargaining Agreement and Trust Agreements, and Violation of the Employee Retirement Income Security Act**

24.   Plaintiffs hereby refer to, and incorporate herein, paragraphs 1 through 23 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

25.   Plaintiffs are informed and believe, and thereon allege, that HWI breached the Master Agreement and Trust Agreements, and violated section 515 of ERISA [29 U.S.C. § 1145], by failing to pay the Trusts the fringe benefit contributions found to be

owed through the Audit. Based on the Audit, HWI owed the Trusts $1,187,587.90 for fringe benefit contributions. After applying a partial payment, HWI owes the Trusts $1,165,960.57 for fringe benefit contributions based on the Audit.

26. Plaintiffs are informed and believe, and thereon allege, that HWI has failed to comply and/or cooperate with the Trustees demand that HWI submit to a second audit (the "Second Audit") of its payroll and other related records for the time period of September 1, 2016, through current. The purpose of the Second Audit is to determine whether HWI has properly reported and paid fringe benefit contributions to the Trusts since September 1, 2016. By refusing to comply and/or cooperate with the Trustees' demand for the Second Audit, HWI breached the Master Agreement and Trust Agreements, and violated section 429 of ERISA [29 U.S.C. § 1059]. As the result of HWI's failure to comply and/or cooperate with the Trustees' demand for the Second Audit, the exact amount of fringe benefit contributions owed by HWI has not been ascertained at this time. This amount will be established by proof at trial herein.

27. Plaintiffs are informed and believe, and thereon allege, that HWI owes, but has failed to pay certain additional amounts of fringe benefit contributions not presently known to the Trusts, but these additional amounts will be established by proof.

28. HWI is "delinquent," as that term is used in the Master Agreement and/or the Trust Agreements.

29. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of - a) interest on the unpaid contributions or b) liquidated damages provided for under the plan in an amount not in excess of 20% of the amount determined by the Court to be unpaid contributions; iv) reasonable attorneys' fees and costs; and v) such other legal or equitable relief as the Court deems appropriate.

///

30. Pursuant to the Master Agreement, Trust Agreements and section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], HWI owes the Trusts interest on all unpaid fringe benefit contributions calculated from the dates the sums were originally due to the Trusts, until paid, or if unpaid until date of entry of judgment. The amount of said interest will be established by proof.

31. Pursuant to the Master Agreement, Trust Agreements and section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], HWI is obligated to pay to the Trusts liquidated damages for the detriment caused by the failure of HWI to timely pay fringe benefit contributions. Pursuant to the Master Agreement, liquidated damages are to be assessed at ten percent (10%) of the untimely contributions. HWI owes the Trusts liquidated damages in an amount to be established by proof.

32. Pursuant to the Master Agreement, Trust Agreements and section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], HWI agreed that in the event of any delinquency it would pay all legal and auditing costs in connection therewith, whether incurred before or after litigation is commenced. It has been necessary for the Trustees to engage legal counsel and incur audit costs for the purpose of collecting contributions and damages from HWI. The Trustees are entitled to their reasonable attorneys' fees and audit costs in connection therewith. The exact amount of the legal fees and audit costs shall be established by proof.

33. Pursuant to the Trust Agreements, HWI agreed that in the event it failed to pay contributions or otherwise comply with the terms of the Master Agreement and Trust Agreements, to post and deliver a good faith deposit or performance bond issued in favor of the Trusts, in an amount based upon a calculation set forth in the Trust Agreements. The Trusts are entitled to such deposit or bond from HWI. The amount of the deposit or bond will be established by proof.

34. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of their judgment, the Trustees request the Court to:

A. Order HWI and its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

B. Order HWI and its representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trusts, in an amount determined by the Court to be appropriate;

C. Order the creation of a constructive trust on all applicable property, and order the transfer of the applicable property to the Trusts; and

D. Order HWI and its representatives, agents and associates, to pay the Trusts all amounts due to the Trusts, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.

## **PRAYER**

WHEREFORE, the Trustees pray for judgment as follows:

1. For unpaid fringe benefit contributions and other damages for breach of the Master Agreement, Trust Agreement and ERISA in amounts as proved;
2. For liquidated damages in amounts as proved;
3. For interest at the applicable rate on all amounts due from their respective due dates until paid;
4. For Plaintiffs' audit costs in amounts as proved;
5. For Plaintiffs' reasonable attorneys' fees in amounts as proved;
6. For costs of suit incurred herein;
7. For such additional relief as this Court deems just and proper, including, but not limited to, the following:
   A. An Order directing HWI, its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal,

      tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

  B. An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Trusts; and

  C. An Order directing HWI, its representatives, agents and associates, to pay the Trusts all amounts due to the Trusts, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.

Dated: January 30, 2019  LAQUER, URBAN, CLIFFORD & HODGE LLP

By: */S/ - J. Paul Moorhead*
  J. Paul Moorhead, Counsel for Plaintiffs Trustees of the Operating Engineers Pension Trust, et al.

## WAIVER OF JURY RIGHT

Dated: January 30, 2019  LAQUER, URBAN, CLIFFORD & HODGE LLP

By: */S/ - J. Paul Moorhead*
  J. Paul Moorhead, Counsel for Plaintiffs Trustees of the Operating Engineers Pension Trust, et al.